Good morning, Honorable Justices. I'm Randy Hess, appearing on behalf of Appellant William Weddington. In this matter, the trial court entered summary judgment against the appellant, Mr. Weddington, and held that an exclusion as a matter of law precluded coverage. The trial court held that the insured attorney's failure to notify her insurer that there was a possibility of a potential claim somehow precluded coverage. Is possibility the rule, or is it reasonable probability? It is a reasonableness probability, reasonableness standard as to this particular And if the attorney should have understood as a matter of reasonable probability that a claim might have been made, the answer on the document should have been yes instead of no. If it was not a reasonable probability, the answer was correct. Reasonable in terms of a subjective standard as to this particular attorney, based on the facts that she knew. Could you tell us exactly what facts were evident to her at the time that she filed the application? At the time she filed the application, there had been a dismissal that had been entered in the case some 14 months earlier. She had that dismissal currently under appeal. She still represented that same client when she filed the application and the policy was issued. So at the time she filled out her application and she looked at this case, she had received no complaints from her client, no indication of any kind of dissatisfaction from her client, from any third party. There was no one that said at any time that she had reason to believe that she had committed malpractice. The client had not threatened the insurer? Definitely not. And that — Not at any time prior to the policy incepting. What does the record show about what the client knew that a five-year automatic dismissal occurred pursuant to California statute? The record reflects the client knew the five-year statute had — that the case had, in fact, been dismissed. The insured attorney had told her client the case had been dismissed, but her opinion was the trial judge in the State court had made an error. Because there was impracticability or futility in her bringing the case to trial and because other co-defendants had filed bankruptcy, which she had diligently pursued and, in fact, obtained settlements from other defendants in this case, that it was impossible for her to bring the case to trial. Third, she thought that the case had been submitted to arbitration and she thought the statute was told and that the trial judge had made a mistake. So she filed her appeal. She thought she was going to win her appeal. She was basically shocked when she received the first notice from her client that there was, in fact, a claim that she had done something wrong. This is very difficult for me. I practiced law for 15 years in California and I watched that five-year statute like a hawk. She must have been aware of the five-year statute. That would have been malpractice not to be aware of it. Could she at least have a reasonable probability that the client was going to be upset for her failure to do so? She didn't believe so. She was not on her radar screen. She did not have a clue. There's not one shred of deposition testimony in the summary judgment motion. There's not one document. There's not one letter, not one email that voices any dissatisfaction by the client to the attorney. And the attorney kept her client totally apprised of what was going on. She was extremely diligent. She thought she would ultimately win this case. She thought she had fought hard for her client. In the application that she submitted, she disclosed two other claims that were outstanding. If we look at the cases that have been cited by AppellE as to the public policy, as to why an insured can't run out and buy a claims-made policy and expect coverage, if they knew or it was so obvious as a matter of law that they would have known, for example, a previous lawsuit, a letter coming in saying you did something wrong, attorney, criminal investigations. That's all the cases that they've cited, too. Without that, there is no way that an attorney would know that they committed any wrongful act. No. Sorry. Go ahead. On this five years, we don't have a provision like this in Alaska, so I'm not real familiar with it. The custom among judges was to schedule a calendar conference and say what's going on, if it had been more than two years or so. And basically, as long as there are good excuses, they'd let it go. And if not, they'd say, I'm going to dismiss in 30 days if nothing is done. So I'm familiar with this. I gather it's not a statute of limitations. It has nothing to do with commencing suit, right? That's correct, Your Honor. Now, when I read the words, I notice the word shall rather than may, and I notice the five years, and I notice except where the parties have filed a stipulation. So I know the court had to do something. I know five years had passed, and I know there was no stipulation. And then I see the words after due notice. What notice was given to her? Was it due notice? I am not sure if the record is complete with regard to the notice that she actually received, but she did make an application before the five-year statute was to run and request the court to submit the matter to arbitration, which is an exception in the five-year statute. Did the court – doesn't the court have a form they send out, your five years is approaching, unless you can show good cause, we're going to dismiss? I am not sure in this case whether an actual form as to that six months ahead of time went out. I do know that she did have a court appearance before the five-year statute ran in which she explained to the court that it was futile and impossible for them to go to trial. I guess I'll get to that. I wasn't really asking about what her excuses were. I was asking about what notice the court sent to her. She did receive at some point in order to show cause why her case should not be dismissed. Okay. That's the notice. And when did that get sent out, and what did it say? I'm not sure whether that was before or after the five-year statute had – the five-year statute had actually elapsed. Now, I did not fully understand the discussion of how the bankruptcy and the arbitration affected what she was doing. She was suing the non-bankrupt Ace or ABC kid home owners, as I recall. The couple went bankrupt and the other didn't? Correct, Your Honor. And she was suing the non-bankrupts? Yes, Your Honor. How did the bankruptcy of the kid home company and the other couple affect her case? They were all co-defendants. They had put a stay on her proceeding on the case for a time in the case. Couldn't they only – could they stay the whole case or only the case against the other couple? Ultimately, it was just the case against the bankrupt defendants. The other couple? That's correct. The insured attorney made a mistake and thought that because the defendants were, in fact, in bankruptcy, that she could not proceed against the others and go to trial. The insured attorney? You mean Reeves, the one we're talking about? Yes, Your Honor. But she also believed that it would have been futile to have a partial trial against some of the defendants without bringing in the other defendants and getting that case resolved. Aye. She believed that to have a piecemeal judgment against some and not the others when she was also working through the bankruptcy court to find a termination. I don't understand that part of the case. It seems to me the most obvious judgment is against the kid home corporation, but it's probably a waste of time because it has no money and it's bankrupt, and all she can really do is a claim in the bankruptcy. As for the couples, I don't quite understand what claim she would have, and I don't understand why, if it was something to do with the company, it wouldn't be joint and several liability and the bankruptcy of the other couple would be the financially healthy couple's problem rather than Reeves' problem. There is no question she made mistakes. She made mistakes in her legal research. But that's why attorneys, doctors get errors and omission policies, to protect their clients and to protect themselves as well. She made mistakes. She was negligent. She miscalculated what was going on. Well, that's two different things. It's judgment calls, and my guess is I made a mistake in every case I ever handled, but negligence, that's another story. She was, we believe, negligent in the way she handled the case. But that's why she got a policy of insurance. And James River, the United States Attorney General … You drifted away from my question. My question was, you've got one financially healthy couple, one bankrupt couple. Ordinarily, I would think it would be joint and several liability. So the bankrupt couple's financial failure would not be Reeves' problem or her client's problem, it would be the financially healthy couple's problem. You go into business with somebody else and business fails and they fail. It's your problem. So why did the bankruptcy affect Reeves' judgment to get the case to trial? From her perspective, her testimony was that she was pursuing the bankrupt company through Bankruptcy Court because there were monies there. And in fact, at some point, she was supposed to receive a claim and payment that would then be offset for the total judgment. Something happened to the bankruptcy payment that the payment went to another creditor rather than her client. Somebody got ahead of her. Right. Okay. And what about the arbitration? Was the case in arbitration? She had thought that the case was in arbitration. She was wrong. The case, she had submitted to arbitration. She asked the court to submit to it. She thought that was sufficient to toll the statute. She thought that the case was in arbitration and therefore the statute would not run. Thank you, counsel. Your time has expired. Thank you. We'll hear from the appellee. Good morning, Your Honors. I'm James Nielsen for the Appellee United National Insurance Company. Nielsen. Thank you, Your Honor. I'd like to actually answer some of the questions that did not quite get answered in the appellant's argument. There were some questions about what notice the attorney had before she signed the application for the second time on June 14, 2004. The five-year rule is, as Judge Wallace described, something that is in the forefront of most every California litigation lawyer's mind. It is a requirement. Cases are thrown out. It is sort of the equivalent of having a default from the defense standpoint. If you're a plaintiff, the last thing you want is to have your case dismissed on procedural grounds because you failed to get it to trial. So it's on every calendaring program. How do you do that, incidentally? I would think a lot of lawyers would look at their calendar, oh, my gosh, this case has been bouncing around for over four years. I'd better get it to trial. So you ask the judge to set it for trial, and he says, I don't have any openings on my calendar until 12 months from now, and you're late. If counsel has made an adequate presentation to the court early on in the case to get the case to trial, and the court has continued to bump it over, it's fairly common, just as you described in the Alaska courts, somewhere late in that fifth year for a court to say, look, we've had this up to trial a couple of times. We can't get this out. We have six courtrooms and 15 trials. I'm just going to take another six months. I'm going to make a finding of impracticality and futility. In fact, judges will often do that on their own just so that they can get the case pushed over and through. So an impracticality finding effect is good enough to get over the shall word? Yes. That's the exception. And there are specific times for example, when they will say the statute is stipulation of the parties. Right. These are court-made. These are court-made exceptions. Your Honor, on the merits, this goes to your question about the merits of the dismissal and so forth. The answer is it was briefed rather nicely by the opposing parties, the Hardisters in the record here at page 198. There's a couple of pages that describe the very simple rules for the exceptions to the five-year statute. What Ms. Reeves was relying on were two things. One, she was relying on the bankruptcy stay as the automatic bankruptcy stay as to one of the defendants. It is certainly not a question of Federal law. Federal law only extends that bankruptcy stay to that particular defendant. California law does no more. The cases specifically say that if one defendant is bankrupt, you still have to get it to trial against the other defendants within the five years. It's not a close question. It's an open and shut question. On the issue of arbitration, one way to satisfy the going to trial within five years rule is to get the case ordered to arbitration. What Ms. Reeves did was check a box on an optional form shortly before, actually while there were motions pending to dismiss her case. She obtained no order. She obtained no actual arbitration. The cases are clear that, yes, it is. Kennedy, what happened? She asked for arbitration, the other side didn't, and that was that? No arbitration? That's correct. There are various procedural forms. You can check a box on one of the case management forms. Let me ask you about something else that bothers me here. The standard for giving notice, with some things it's really clear. If a client sends you a letter saying, I'm going to sue you, you have notice of a claim and you better tell the insurance company when you apply for malpractice insurance. At the other extreme, which I think is the area where we are, you've made a mistake. Your case looks like it's failing, and the failure looks related to your mistake. But the client has not said they're going to sue you. And the thing about it is, it's pretty common for a case to be going sour and for a lawyer to say, oh, jeez, I wish I'd deposed that witness before they made it impossible to find them. If only I had thought to get that document. It's so common. And I'm thinking the standard you want, anytime you've made a mistake and you know you've made a mistake, you have to report that. My gosh, you couldn't apply for insurance without going through all the files in your office and listing all the mistakes you've made in probably the majority. And the thing is, most mistakes don't wind up hurting the client. One way or another, you pull it out, most particularly if it's nonsubstantive. So it's hard for me to see how you can justify saying no insurance because you had a mistake that you knew you'd made. Your Honor, the James River case from this circuit last year is a great example of what you're talking about. There are things that go on in cases. There are errors of judgment. Things happen all the time. I can't say that I ever handled a case, including my biggest victories in all the cases I won as well as those I lost, where I didn't make mistakes. Sure. Well, Your Honor, I read the briefs in a case I'm preparing for argument, and I realize, geez, this point could have been made differently or better. These are all questions of judgment. I think that's what God invented Malox for. These are all questions of judgment. This was not a question of judgment, though. That's the key. Isn't what we're looking for is not whether or not a person made a mistake. All lawyers make mistakes. What we're looking is whether it's reasonably probable a claim will be brought. Now, in this case, it's argued that it was not reasonably probable because she was doing a series of things, and she was fully advising the client of what happened, et cetera. That is, that the case has been dismissed with prejudice to the five years, but I think that whatever she said to the client. Now, would you take that representation, if it is accurate, that is, based upon the record, and tell us why you think that we should still affirm the district court? Because the client was informed only by this lawyer, and this lawyer didn't believe she'd made a mistake. So this is a subjective question. But if you look at the facts, it's not possible for a reasonable lawyer to look at what happened here. We're talking abstractly in these concepts about, jeez, we're just making a mistake, but let's look at the record in this case. The record is huge in a case like this. The underlying case was filed in 1997. Recall that we're talking about 2004 for the application, seven years later. In 2002, the question was asked of the appellant when the OSC redismissal was sent. It was sent in 2002. Ms. Reeves showed up with other counsel, argued about why the case shouldn't be dismissed as it was approaching the five-year rule. The opposing parties were told to file a motion to dismiss. They filed motions to dismiss in 2002. The motions were granted. Ms. Reeves points out that there was no ultimate judgment entered on the motion on the order granting dismissals, and therefore, it was not appealable. And she had erroneously filed an appeal from those, abandoned the appeal, and later, in 2004, sought to revive her case by filing a motion to set trial, a motion to set aside void judgment, various motions, all in the spring of 2004. At that same time, she signed not once but twice the application for insurance, once at the time she was filing the motions. And then, in June of 2004, and I think these facts are huge, in June of 2004, on the 2nd of June, she received a tentative ruling against her from the third judge to address this issue, reaching the same conclusion in the Sonoma County Superior Court, saying these motions are denied, these motions are denied not merely as wrong on the merits, but absolutely frivolous. And I am sorry. Scalia, her argument in part is that the court decisions were erroneous, and she claims that the James River case establishes a subjective test. In other words, one could go back and reexamine to determine whether these California Superior Court decisions were correct or not. What's your response? Your Honor, I have no doubt that the record shows that Ms. Reeves has testified that she didn't believe she made an error, and therefore she subjectively didn't believe she was going to be sued, despite this long history of being pounded over the head by the three judges in the Superior Court, the to lose her client's case, not on the merits, but because she just couldn't get it to trial. The James River case addressed, obviously, it's a question of Arizona law, but it's instructive here because it is factually dissimilar both as to the nature of the claim that was made against the lawyer. It is factually dissimilar as to the wording of the application question that was decided by the court here. And also, it's sort of interesting because when you get to the exclusion, there's both an application issue and an exclusion issue addressed in James River by this circuit. Let's look at how the court addressed those two issues. In James River, the facts were that the client came to the lawyer down in Phoenix and presented a case. They wanted to look at what their rights were to recover various monies and so forth. Gave it to the lawyer. The lawyer agreed to take it. They paid him a little bit of money. And he apparently went off the map. He did not return calls for two or three months. They left a couple dozen calls for him. He never returned them. At some point, the clients threw up their hands and said, we can take our file back. And, by the way, don't expect us to pay this bill. The lawyer said, send us your file back, this will close the matter, and we're taking this to another lawyer. The lawyer said, you're right, I'm sorry, I wasn't responsive. You're absolutely right, here's the file, and I'm waving my feet. Roberts. Thank you, counsel. You may finish the response, but your time will be up. I'm sorry. I apologize, Your Honor. The application question in James River dealt with a – was found to have a – be subject to a subjective standard. Significantly absent from the question in James River, the application question was whether the client applicant – pardon me, the attorney applicant was reasonably aware of circumstances that would cause an attorney to reasonably believe that a claim would be made. Followed a line of cases that addressed that sort of language, found a subjective standard applied, and applied that subjective standard to reverse the superior court. Significantly on the exclusion, which did include the word reasonably, the Court picked up the word reasonably and said, well, reasonably speaking, this lawyer, based on these facts, wouldn't – a reasonable lawyer wouldn't have expected a claim. Thank you, counsel. You're making a very long answer. Thank you very, very much, counsel. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Kleinfeld